UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

AIDS HEALTHCARE FOUNDATION, INC.      CIVIL ACTION

VERSUS

CITY OF BATON ROUGE/PARISH OF     NO.: 17-00229-BAJ-RLB
EAST BATON ROUGE

## RULING AND ORDER

Before the Court are the **Second Motion to Dismiss under Rule 12(b)(1) and 12(b)(6) (Doc. 48)** and the **First Motion to Dismiss under Rule 12(b)(1) and 12(b)(6) (Doc. 11)** filed by Defendant City of Baton Rouge/Parish of East Baton Rouge ("EBR"), through the City of Baton Rouge Division of Human Development and Services. Plaintiff, AIDS Healthcare Foundation, Inc. ("AHF"), filed an Opposition to the First Motion to Dismiss. (Doc. 29). Defendant then filed a Reply Memorandum to the Opposition to the Motion to Dismiss. (Doc. 34). In response, Plaintiff filed a Sur-Reply Memorandum in Opposition to the Motion to Dismiss. (Doc. 35). Subsequently, Plaintiff filed its Second Amended Complaint (Doc. 47), which alleged the amount in controversy for diversity jurisdiction. In response, Defendant filed its second Motion to Dismiss (Doc. 48). The Court has jurisdiction under 28 U.S.C. § 1332. Oral argument is not necessary. For the following reasons, the **Motions to Dismiss (Doc. 11; Doc. 48)** are **DENIED**.

1

## I. BACKGROUND

Plaintiff seeks declaratory relief, injunctive relief, and damages arising from Defendant's decision not to renew its federally-funded Ryan White Program Contract ("the Contract") with Plaintiff. (Doc. 10 at ¶¶ 1, 4). On October 2, 2015, Defendant issued a request for proposal (the "RFP"), which sought proposals from qualified public or non-profit entities to become a sub-recipient of Defendant's Ryan White Program funds to assist in providing core services to persons living with HIV/AIDS. (*Id.* at ¶¶ 29, 31). Plaintiff and Defendant entered into the Contract with an effective date of March 1, 2016. (*Id.* at ¶ 41). The Contract provided for an initial term of March 1, 2016 to February 28, 2017, and the RFP provided that "[u]p to two additional 12-month renewal awards may be made based upon the availability of funds and acceptable contract performance." (*Id.* at ¶ 43) (quoting Doc. 10-1 at p. 9).

Under the Contract, Plaintiff, a sub-recipient of Defendant's federal funds, provided medical services to uninsured and underinsured people with HIV/AIDS in Baton Rouge, Louisiana. (Doc. 10 at ¶ 1). In January 2017, Defendant scheduled a routine Ryan White Program monitoring review of Plaintiff's operations related to its 2016–17 Contract. (*Id.* at ¶ 49). Pursuant to Section XXI. "Program Income" of the Contract, Defendant requested production of several documents to review, including documents regarding Plaintiff's use of the 340B Program.[1] (*Id.* at ¶ 50). Plaintiff

---

[1] The 340B program is a separate federal program in which Plaintiff also participates that allows certain healthcare providers to buy drugs at discounted rates. (Doc. 10 at ¶¶ 2, 21).

2

refused to comply, explaining that it did not believe Defendant had the authority to collect and review Plaintiff's 340B documentation. (*Id.* at ¶ 51).

On April 18, 2017, Defendant wrote to Plaintiff to inform it of the non-renewal of the Contract due to its failure to submit documentation requested by Defendant concerning the 340B program. (Doc. 10 at ¶ 70). Defendant informed Plaintiff that it would be transitioning Plaintiff's patients to other agencies; however, some of Plaintiff's patients indicated that they wished to continue to receive services from Plaintiff. (*Id.* at ¶¶ 70–71). Plaintiff continued to provide these services, even though it had to pay for these services with its own funds, and has billed Defendant for reimbursement. (*Id.* at ¶¶ 72–73).

Plaintiff seeks a declaration that Defendant lacks the authority under 42 U.S.C. § 256b to decertify Plaintiff as a covered entity under the 340B program and to demand documentation from Plaintiff regarding the 340B program. (Doc. 10 at pp. 14, 16). Plaintiff also seeks a declaration that Defendant's failure to renew the Contract was arbitrary, capricious, and in violation of 45 C.R.F. § 75.328(a). (*Id.* at p. 18). Lastly, Plaintiff raises a number of state law claims based on breach of contract and the Louisiana Public Bid Law, and requests injunctive relief. (*Id.* at pp. 19–20, 22).

## II. DISCUSSION

### A. Motion to Dismiss For Lack of Jurisdiction

#### 1. *Legal Standard*

A motion to dismiss under Rule 12(b)(1) is analyzed under the same standard as a motion to dismiss under Rule 12(b)(6). *Benton v. United States*, 960 F.2d 19, 21 (5th Cir. 1992) (per curiam). "A claim may not be dismissed unless it appears certain that the plaintiff cannot prove any set of facts that would entitle him to legal relief." *In re Supreme Beef Processors, Inc.*, 468 F.3d 248, 251 (5th Cir. 2006) (en banc). The Court "take[s] the well-pled factual allegations of the complaint as true and view[s] them in the light most favorable to the plaintiff." *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008). When analyzing a Rule 12(b)(1) motion, the Court "may find a plausible set of facts by considering any of the following: '(1) the complaint alone; (2) the complaint supplemented by the undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.'" *Id.* (quoting *Barrera–Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996)).

Even so, the party asserting federal jurisdiction bears the burden of proof on a motion to dismiss for lack of subject-matter jurisdiction. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). When a district court finds that it lacks subject-matter jurisdiction, its determination is not on the merits of the case, and does not

4

bar the plaintiff from pursuing the claim in a proper jurisdiction. *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977) (per curiam).

### 2. Diversity Jurisdiction under 28 U.S.C. § 1332

A Plaintiff properly invokes § 1332 jurisdiction when he presents a claim between parties of diverse citizenship that exceeds the required jurisdictional amount, that is, $75,000, exclusive of interest and costs. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 513 (2006) (citing § 1332 (a)); *see also Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 584 (2005).

Here, there is no dispute that there is diverse citizenship between the parties. (Doc. 34 at p. 4). Accordingly, the only issue is whether the amount in controversy exceeds $75,000 as required under 28 U.S.C. § 1332(a). The burden of establishing the requisite amount in controversy in federal court rests on the party seeking to invoke diversity jurisdiction. *St. Paul Reinsurance Co. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998). This burden may be established by either (1) demonstrating that it is facially apparent that the claims are likely above $75,000, or (2) setting forth facts in controversy that support a finding of the jurisdictional minimum. *See Luckett v. Delta Airlines, Inc.*, 171 F.3d 295, 298 (5th Cir. 1999). It has long been recognized that "unless the law gives a different rule, the sum claimed by the plaintiff controls if the claim is apparently made in good faith." *St. Paul Reinsurance*, 134 F.3d at 1253 (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288 (1938)); *see also Grant v. Chevron Phillips Chem. Co.*, 309 F.3d 864, 869 (5th Cir. 2002); *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1408 (5th Cir. 1995).

To justify dismissal, "it must appear to a legal certainty that the claim is really for less than the jurisdictional amount." *St. Paul Reinsurance*, 134 F.3d at 1253 (quoting *St. Paul Mercury*, 303 U.S. at 289). The Court must first examine the complaint to determine whether it is "facially apparent" that the claims exceed the jurisdictional amount. *Id.* (quoting *Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir. 1995)). If it is not thus apparent, the Court may rely on "summary judgment-type" evidence to ascertain the amount in controversy. *Id.*

Plaintiff is seeking damages for its loss of contract funds for the two 12-month renewal terms of the RFP, as well as expenses incurred in continuing to provide services to its patients pursuant to the Contract's terms. (Doc. 47); *see also* (Doc. 10 at p. 21). The initial Contract value was $66,376.00. (Doc. 10-2 at p. 18). However, during the first term (2016 to 2017) the Contract was amended twice. Amendment 1 raised the Contract value to $181,876 (*Id.* at p. 61), while Amendment 2 reduced the Contract value to $80,854. (*Id.* at p. 62). Plaintiff relies on the fluctuating Contract value (between $66,376 and $181,878), which places the amount in controversy between $132,752 and $363,756 for the two 12-month renewal terms to meet the jurisdictional limit. (Doc. 35 at p. 2). Defendant contends that Plaintiff was only reimbursed $42,221.88 out of the final contract value of $80,854 for qualified services, which in turn would have affected and reduced Plaintiff's potential award for the 2017-2018 contract year to approximately $29,421.66. (Doc. 34 at p. 6).

The Court finds that Plaintiff has established its burden by setting forth facts in controversy that support a finding of the jurisdictional minimum. Plaintiff makes

a good faith claim that the fluctuating Contract value (between $66,376 and $181,878), places the amount in controversy between $132,752 and $363,756 for the two 12-month renewal terms to meet the jurisdictional limit. (Doc. 35 at p. 2).

Defendant argues that the amount in controversy should be based upon the actual amount received by Plaintiff, not awarded. (Doc. 34 at p. 5). Specifically, out of the present $80,854 contract value for 2016-2017, Plaintiff only received and expended $42,221.87 for the entire contractual year. (Doc. 34 at p. 6; Doc. 48-1 at p. 4). According to Defendant, there is no evidence of any changes in Plaintiff's services, patients, or providers and thus, Plaintiff would only be entitled to a maximum award of $42,221.87 for the 2017-2018 term. (Doc. 48-1 at p. 5). Defendant further contends that the third contract amount for 2018-2019 should not count towards the amount in controversy without a determination of whether Plaintiff would be in compliance for the 2017-2018 term year. (Doc. 34 at p. 5). Thus, such a determination would be premature and the amount in controversy would not be met. (Doc. 48-1 at p. 5).

However, the Court must dismiss the Complaint only if it appears to a legal certainty that the claim is really for less than the jurisdictional amount. The Court has considered the sum claimed by the Plaintiff for the contractual years at issue in the Plaintiff's Complaint—2017-2018 and 2018-2019. The Court finds that the amount claimed by Plaintiff "controls" and the facts support a finding that the jurisdictional minimum has been met. Although Plaintiff bears the burden of proving damages, the Court is unwilling to conclude at this early stage that Plaintiff cannot prove damages from the 2018-2019 term. Even with the conservative totals advanced

by Defendant, the amount in controversy would be exceeded if the 2018-2019 term were included. Therefore, Defendant's motion to dismiss for lack of subject matter jurisdiction is denied as it does not appear to a legal certainty that the claims are, in actuality, less than the jurisdictional amount.

### B. Motion to Dismiss For Failure to State a Claim

#### 1. *Legal Standard*

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the complaint against the legal standard set forth in Rule 8, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft*, 556 U.S. at 679.

"[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). Hence, the complaint need not set out "detailed factual allegations," but something "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action" is required. *Twombly*, 550 U.S. at 555. When conducting its inquiry, the Court "accepts all well-pleaded facts as true and views those facts in the light most favorable

to the plaintiff." *Bustos v. Martini Club Inc.*, 599 F.3d 458, 461 (5th Cir. 2010) (quotation marks omitted).

### 2. *Private Right of Action*

#### a. *340B Program*

Plaintiff seeks a declaration that Defendant lacks the authority under 42 U.S.C. § 256b (or the "340B program") to decertify Plaintiff as a covered entity and to demand documentation from Plaintiff regarding the 340B program.[2] (Doc. 10 at pp. 14, 16). Defendant argues that Counts 1–3 of Plaintiff's Complaint should be dismissed for failure to state a claim because Plaintiff has no private right of action under 42 U.S.C. § 256b or 45 C.R.F. § 75.328(a). (Doc. 11-1 at pp. 5–6). Specifically, Defendant argues that Congress vested the United States Department of Health and Human Services ("HHS")[3] and pass-through entities, such as Defendant, with the exclusive authority to oversee compliance with general administration rules concerning federal monetary awards such as the Ryan White award at issue. (Doc. 11-1 at pp. 5–6; Doc. 34 at p. 1). Moreover, Defendant argues that declarations

---

[2] The 340B Program is a federal drug discount program that requires participating drug manufacturers to sell their drugs to certain categories of healthcare providers, called "covered entities," at a discounted price known as the 340B ceiling price, which the covered entity may then dispense or administer to its outpatients. 42 U.S.C. § 256b(a)(1). (Doc. 10 at ¶ 21). One group of covered entities is "any entity receiving assistance under subchapter XXIV [Ryan White CARE Act] (other than a State or unit of local government)." 42 U.S.C. § 256b(a)(4)(J). (Doc. 10 at ¶ 22).

[3] Under Part A of the Ryan White Program, the United States Department of Health and Human Services ("HHS"), Health Resources and Services Administration ("HRSA") provides federal funds for the purpose of, *inter alia*, providing medical services to people with HIV/AIDS. (Doc. 10 at ¶ 14). The Ryan White Program is overseen by the HIV/Aids Bureau ("HAB"), a sub-agency within HRSA. (*Id.* at ¶ 15). The 340B Program, which is a separate federal program, is overseen by the Office of Pharmacy Affairs ("OPA"), a sub-agency within HRSA. (*Id.* at ¶ 25).

regarding the rights and obligations under the 340B program should be addressed by HHS. (Doc. 11-1 at p. 5).

"[R]ecognition of any private right of action for violating a federal statute" . . . "must ultimately rest on congressional intent to provide a private remedy." *Astra USA, Inc. v. Santa Clara Cnty., Cal.*, 563 U.S. 110, 117 (2011) (quoting *Va. Bankshares, Inc. v. Sandberg*, 501 U.S. 1083, 1102 (1991)). Defendant relies on *Astra*, in which the United States Supreme Court held that 340B covered entities have no right to enforce contracts between drug manufacturers and the Secretary of HHS under § 340B as third-party beneficiaries. 563 U.S. 110, 111 (2011).

The instant case, however, presents the issue of whether a 340B entity (AHF) may sue the recipient of federal funds (EBR) from HHS for not renewing a contract under a different federal program (Ryan White CARE Act) based on the entity's refusal to provide 340B Program documentation. In other words, does the Grantee of Ryan White CARE Act funds have the authority under the 340B Program to review its sub-recipients 340B Program documentation. The Court notes that Plaintiff has 340B status solely because it receives funds under the Ryan White CARE Act. (Doc. 10 at ¶¶ 21–22).

The Court finds that Plaintiff has stated a plausible claim for relief under 42 U.S.C. § 246b. Plaintiff in this case does not seek to enforce the 340B statute, nor does Plaintiff seek to claim a right under the statute; rather, Plaintiff seeks a

declaration that Defendant does not have the authority to request documentation related to the statute.

### b. Procurement Statute

Plaintiff also seeks a declaration that Defendant's failure to renew the Contract was arbitrary, capricious, and in violation of 45 C.R.F. § 75.328(a), the "procurement statute." (Doc. 10 at p. 18). Plaintiff contends that it has an implied right of action because it is in the class of persons that the regulation was intended to protect. (Doc. 29 at pp. 3–4). Defendant asserts that there is no implied right of action under 45 C.F.R. § 75.328(a) and that Congress vested HHS and pass-through entities the right to regulate under the statute.[4] (Doc. 34 at pp. 1–2).

To determine whether the Court should infer a cause of action when one is not explicitly authorized by Congress, the Supreme Court requires consideration of four questions posed in *Cort v. Ash*, 422 U.S. 66, 78 (1975). *See Wright v. Allstate Ins. Co.*, 250 F. App'x 1, 5 (5th Cir. 2007) (unpublished). "The *Cort* questions are: '(1) whether the plaintiff is one of a class for whose especial benefit the statute was enacted; (2) whether there is an indication of legislative intent to create or deny such remedy; (3) whether such a remedy would be inconsistent with the underlying legislative purpose; and (4) whether the cause of action is one traditionally relegated to state

---

[4] Defendant cites as authority 45 C.F.R. § 75.371, which provides "If a non-Federal entity fails to comply with Federal statutes, regulations, or the terms and conditions of a Federal award, the HHS awarding agency or pass-through entity may impose additional conditions . . . [or] may" temporarily withhold cash payments, disallow cost of the activity, suspend or terminate the award, etc. 45 C.F.R. § 75.371; (Doc. 34 at p. 2); *see also* 45 C.F.R. § 75.333 ("The non-Federal entity must make available, upon request of the HHS awarding agency or pass-through entity, technical specifications on proposed procurements").

11

law.'" *Id.* (quoting *Till v. Unifirst Federal Sav. & Loan Ass'n*, 653 F.2d 152, 157 (5th Cir. 1981)). Cases subsequent to *Cort* have recognized that all four factors may be important, but the determinative question is whether Congress intended to create a private right of action in favor of Plaintiff. *See California v. Sierra Club*, 451 U.S. 287, 293 (1981) (internal citations omitted).

45 C.F.R. § 75.328(a) which governs the procurement at issue herein, provides:

> All procurement transactions must be conducted in a manner providing full and open competition consistent with the standards of this section. . . . Some of the situations considered to be restrictive of competition include but are not limited to: . . . (7) Any arbitrary action in the procurement process.

Here, Plaintiff is one of the class for whose benefit the statute was intended—*i.e.* persons doing business with the State receiving federal funds to implement a federal program. While the legislative history is silent regarding a private right of action, implying a private remedy would be consistent with the underlying purpose of the legislative scheme. The legislative scheme is to promote "full and open competition" and prevent arbitrary actions from being taken during the procurement process. *See* 45 C.F.R. § 75.328(a). Certainly, implying a private right of action would further the underlying purpose by allowing bidders and other participants in the procurement process to enforce the regulation. Finally, the cause of action is not one traditionally relegated to state law, as this is a federal procurement regulation governing the procurement of goods and services under a federal program, with federal dollars.

Therefore, at this stage, the Court finds that Plaintiff has stated a plausible claim for relief based on federal law.[5]

### 3. *State Law Claims*

Lastly, Plaintiff raises several state law claims based on breach of contract and the Louisiana Public Bid Law, and requests injunctive relief. (Doc. 10 at pp. 19–20, 22). The Court finds that Plaintiff has plausibly pleaded that Defendant breached its Contract. According to the Complaint, Defendant's decision not to renew the Contract based on Plaintiff's refusal to provide documentation—which Defendant allegedly had no authority to request—was arbitrary, capricious, and violates the terms of the RFP and the Contract. Particularly, the RFP provides for renewal of the Contract upon "acceptable contract performance." (Doc. 10 at ¶ 104) (quoting 10-1 at § 2.2, p. 35). According to Defendant's monitoring reports attached to the Complaint, Plaintiff's performance under the Contract has been acceptable. (*Id.* at ¶ 106) (*see* Doc. 10-3; Doc. 10-6). Therefore, Plaintiff has plausibly pleaded that Defendant's decision not to renew the Contract despite Plaintiff's acceptable performance under the Contract was arbitrary, capricious, and violated the terms of the RFP and the Contract.

Similarly, the Complaint states a plausible claim for relief against Defendant for a violation of the Louisiana Public Bid Law. Defendant is a public entity as defined by the Public Bid Law. (Doc. 10 at ¶ 111); *see* La. Rev. Stat. §38:2211(a)(10). Pursuant to the RFP, proposals submitted are subject to the Public Bid Law. (*Id.* at ¶ 112)

---

[5] For this reason, Plaintiff also has federal question jurisdiction pursuant to 28 U.S.C. § 1331.

(citing Doc. 10-1 at § 1.45, p. 34). Moreover, the Public Bid law prohibits procurement decisions from being made in an arbitrary and capricious manner. (*Id.* at ¶ 113); *see* La. Stat. Ann. § 38:2212. Again, Plaintiff has plausibly pleaded that Defendant has violated the Louisiana Public Bid Law by arbitrarily deciding not to renew Plaintiff's Contract, despite Plaintiff's adequate performance under the Contract. (*Id.* at ¶ 114). Therefore, as to Counts 4–8, Defendant's motion to dismiss for failure to state a claim is denied as the Complaint contains sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.

### III. CONCLUSION

Accordingly,

**IT IS ORDERED** that Defendant's **Motions to Dismiss (Doc. 11; Doc. 48)** are **DENIED**.

Baton Rouge, Louisiana, this 15th day of November, 2017.

_____
BRIAN A. JACKSON, CHIEF JUDGE
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA